UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KAREN KILBERT HILLHOUSE, ET AL., *Plaintiffs* | CIVIL ACTION NO.: 24-1855 |
| VERSUS | SECTION: "P" (1) |
| IPFS CORPORATION, ET AL., *Defendants* | JUDGE DARREL J. PAPILLION |
| | MAGISTRATE JUDGE JANIS VAN MEERVELD |

ORDER AND REASONS

This case arises out of a motor vehicle accident that resulted in serious injuries to Plaintiffs, where Defendant driver Joshua Smith was allegedly intoxicated and under the influence of marijuana at the time of the accident. Before the Court is Mr. Smith's Motion to Stay (Rec. Doc. 94), wherein he seeks to stay proceedings solely as to the claims against him until the resolution of parallel criminal proceedings against him that are pending in the Criminal Court for Orleans Parish. Finding that a limited stay is appropriate under the circumstances, the Motion is GRANTED; discovery *to Mr. Smith* concerning his activities and alleged intoxication on the night of the accident is STAYED until September 10, 2025.

Background

Plaintiffs Karen Kilbert Hillhouse, Nelson Curren, and Ryan Curren left their home in the early morning hours on May 26, 2024, for a family fishing trip. They were in a pickup truck, with Ryan driving, Nelson in the front passenger seat, and Karen in a back passenger seat. At about 4:14 a.m., a SUV owned by IPFS Corporation and being driven by Mr. Smith ran a red light in the process of making a left-hand U-turn and collided with the pickup truck, propelling it head on into a concrete pillar.

1

At the scene of the collision, the investigating officers smelled alcohol emanating from Mr. Smith's breath, and an independent witness saw him dispose of liquor bottles. Mr. Smith admitted to the investigating officers that he had consumed alcoholic beverages prior to the collision. He submitted to a breathalyzer test at 6:27 a.m., which returned a result of .104 %.

At the time of the accident, Mr. Smith was employed as an Associate Sales Executive for IPFS Corporation. Plaintiffs allege that IPFS sent Mr. Smith to New Orleans, Louisiana, and shipped him the SUV so he could perform his job duties. Plaintiffs allege, on information and belief, that Mr. Smith was networking and entertaining clients or potential clients for IPFS in the hours leading up to the collision. They allege that IPFS encouraged its associates to consume alcohol in furtherance of their job duties to socialize with, entertain, and network with current and potential clients. They allege that Mr. Smith was acting in the course and scope of his employment at the time of the collision.

Ryan Curren alleges he suffered severe and debilitating injuries to the entire left side of his body. Nelson Curren alleges he sustained multiple severe and debilitating personal injuries including multiple breaks and fractures to his arm, a shoulder replacement, a crushed vertebra, and injuries to his head, neck, and back. Karen Hillhouse appears to have suffered the most serious physical injuries, including fractures of her cervical spine at C1-C6, fractures of her thoracic spine at T5-8 and T10-12, and fractures to her lumbar spine. At the time suit was filed on June 12, 2024, she had undergone 10 surgical procedures, her spine had been fused with multiple rods and screws, a permanent catheter had been inserted because she had no bowel or bladder function, she had a feeding tube, she was breathing through a permanent tracheostomy, and she had developed pneumonia. Plaintiffs now indicate that the accident rendered Ms. Hillhouse a paraplegic, requiring lifelong care and medical attention.

Karen, Ryan, Nelson, and Lauren Hillhouse (Karen's adult daughter) filed suit in Louisiana state court. In addition to damages for their own injuries, Ryan and Nelson seek bystander and *LeJeune* damages for witnessing the injuries to Karen (Ryan's stepmother and Nelson's wife) and Nelson (Ryan's father), while Karen seeks *LeJeune* damages for witnesses the injuries to Ryan and Nelson. Lauren and Nelson seek loss of consortium damages. Plaintiffs also seek punitive damages. They have named Mr. Smith and IPFS, along with their insurers,[1] as defendants. Defendants removed the matter to this Court on July 25, 2024. Currently, trial is scheduled for March 23, 2026, and discovery is to be completed by December 11, 2025. Rec. Doc. 57. Plaintiffs' expert reports are due on September 12, 2025.

<u>The Criminal Proceedings and the Current Motion</u>[2]

In addition to this civil litigation, there are also open criminal proceedings arising out of the same incident pending against Mr. Smith in Orleans Parish Criminal District Court. In his Motion to Stay, Mr. Smith indicates:

> Smith was originally charged in Orleans Parish Traffic Court with Operating a Vehicle While Intoxicated and Careless Operation of a Vehicle. This was Smith's first time being charged with either of these offenses[.] In preparation for the hearing before the municipal and traffic court judge on these two charges, Smith attended 12 Alcoholics Anonymous meetings, performed 32 hours of community service, took a driver's education course and submitted himself for assessment by a substance abuse counselor. He and his attorney were hopeful that this effort, which is generally the process for a pretrial diversion program, would be sufficient to have the traffic charges resolved so that he could focus his attention on the civil

---

[1] Plaintiffs name American Guarantee and Liability Insurance Company and Zurich American Insurance Company as liability insurers. They also name XYZ Insurance Company as a placeholder for any additional insurers, including any that issued auto liability policies.

[2] Prior to Mr. Smith filing the instant motion to stay, Plaintiffs filed a motion to compel (Rec. Doc. 91), wherein they seek to compel Mr. Smith to provide the following requested discovery: (1) his past medical and prescription records for one year prior to Plaintiffs' retained toxicological expert's assessment; (2) his financial records (including specifics on certain Cash App payments made prior to the accident) and all information related to his financial transactions from May 24, 2024 to May 29, 2024; and (3) permission to complete a forensic examination of Mr. Smith's cell phone.
 On the same day Mr. Smith filed his opposition to the motion to compel, he also filed the instant motion to stay. The Court continued oral argument on the motion to compel (Rec. Doc. 91) without date and provided that "[f]ollowing resolution of the Motion to Stay, the undersigned will re-evaluate whether oral argument on Plaintiffs' Motion to Compel is necessary." Rec. Doc. 96.

> claim at bar. However, just prior to the hearing, Smith was advised that Plaintiff's counsel went to the District Attorney (with whom she worked in his civil practice) and requested that the charges be upgraded. The two traffic court charges were dismissed *nolle prosequi*, and the case was transferred to criminal court.
>   On March 19, 2025, Smith was charged by the District Attorney for the Parish of Orleans, Louisiana, via the Bill of Information, with three counts of first degree vehicular negligent injuring claim, all felonies, and one charge of driving while intoxicated, a misdemeanor. Smith appeared in Criminal Court on April 21, 2025, and plead not guilty with his criminal defense attorney.

Rec. Doc. 94-1 at 2-3 (citations omitted). These charges remain pending and at the June 18, 2025, hearing on the present Motion to Stay, counsel for Plaintiffs reported[3] that a motion hearing has been set for August 7, 2025, in the criminal case, but that no trial has yet been set. Mr. Smith faces a penalty of up to ten years imprisonment for each charge.

In the present Motion to Stay, Mr. Smith argues that this civil matter should be stayed as to the claims against him pending the resolution of the criminal proceedings because plaintiffs and their counsel have a monetary interest in the claim of intoxication against Mr. Smith, have inserted themselves in the criminal proceedings through their counsel in the civil matter (who allegedly provided documents to the District Attorney and urged him to increase the charges), and are simultaneously pursuing discovery against Mr. Smith regarding his alleged intoxication in this civil proceeding. Mr. Smith does not object to discovery continuing against IPFS corporation and the insurers on issues related to the issues of course and scope of employment and insurance coverage. His counsel clarified at oral argument that he would also be willing to answer discovery regarding these issues, including and/or along with what he thought his authority was as to use of the vehicle, his background, and his training, but not if such issues overlap with questions regarding his intoxication at the time of the accident.

---

[3] Plaintiffs' counsel sent a paralegal to observe a June 12, 2025, hearing in the criminal proceeding. Mr. Smith's civil counsel reported that she had not been able to get into contact with Mr. Smith's criminal defense attorney.

Citing the six factor test employed in the Fifth Circuit when determining whether to grant a request for a stay, Mr. Smith argues that a stay is appropriate here because: (1) there is overlap in the proceedings; (2) the status of the criminal case is progressing (there has been an indictment and a discovery hearing was set in the criminal matter for June 12, 2025); (3) if the civil proceeding is not stayed, his Fifth Amendment privilege against self-incrimination could be undermined and fruits of civil discovery could be used to bolster the criminal case, which would be an expansion of the limited rights of criminal discovery; (4) it is in the interest of the courts; and (5) the public interest weighs in favor of law enforcement and prosecution of criminal matters over the resolution of a private civil claim for money damages.

In opposition, Plaintiffs argue that Mr. Smith's concern with his privilege against self-incrimination is misplaced because he has already waived that privilege as to this proceeding[4] by answering written discovery regarding his drug and alcohol use on the date of the collision without invoking his Fifth Amendment privilege. Specifically, in response to Interrogatory 4 asking him to state how much alcohol and/or drugs he consumed within the 24 hour period prior to the accident and who he was with and where they were, Mr. Smith responded that:

> on the evening of the accident, he went out by himself to explore the city he had recently moved to, and he did not yet have any friends in the area. He does not recall the exact number of drinks he had, but knows that he had some drinks at a bar called Carré and visited other bars on Bourbon Street, but does not recall the names of those establishments. He did not use any drugs.

Ex. B to Mo. to Compel, Rec. Doc. 91-6, at 3. He only asserted one objection: the interrogatory contained multiple parts that contemplated several separate interrogatories. Plaintiffs point out that at the time Mr. Smith answered this interrogatory, he was already facing charges (albeit non-felony charges in Traffic Court) arising out of his alleged intoxication at the time of the accident. They

---

[4] Plaintiffs do not argue that Smith has waived his Fifth Amendment privilege as to the criminal proceedings.

5

argue that Mr. Smith has therefore voluntarily answered as to materially incriminating facts regarding his drug and alcohol use at the time of the incident and he no longer retains the Fifth Amendment privilege as to these issues.

And even if the Court were to find waiver inapplicable, Plaintiffs argue that a blanket stay is not appropriate because: (1) there is only partial overlap between the civil and criminal cases (there are no criminal charges relative to possession of marijuana and the civil case involves broader issues related to the liability of Mr. Smith's employer); (2) the trial date for the criminal case has not been set; (3) the prejudice of a stay to the Plaintiffs is "deeply consequential," as the family cannot afford the now-required ADA accessible home or van and Mrs. Hillhouse requires around-the-clock care; (4) a stay would prejudice Plaintiffs by preventing them from securing evidence, such as memories of the individuals with whom Mr. Smith communicated with surrounding the collision, the identity of whom Mr. Smith made Cash App transactions with, and the electronic data on Mr. Smith's cell phone, which would or could be lost during the pendency of the stay and "effectively preventing them from obtaining evidence to prove their case"; (5) there is no financial burden on Mr. Smith of defending himself against two simultaneous lawsuits, as his civil defense is being paid for by insurance; and (6) the court and the public have an interest in ensuring that matters are moved expeditiously. Plaintiffs also suggest that a "stay is just one of the several procedures available to this Court and other options may be utilized in lieu of imposing a blanket stay to protect Smith's interests," such as a protective order "prohibiting the use of Smith's deposition testimony or future discovery responses in any criminal proceedings brought against him except for perjury or impeachment." *Id.* at 19. Plaintiffs also indicate that the forensic and electronic data that they seek on Mr. Smith's cellphone "can be protected by having the results

6

held by a court appointed forensic expert . . . until the conclusion of any ongoing criminal proceedings." *Id.* at 15.

In reply, Mr. Smith argues that he has not waived his Fifth Amendment right against self-incrimination because his discovery responses "only amount to a verification of the breathalyzer test results," and do not amount to "an admission that he was intoxicated at the time of the accident." Rec. Doc. 104, at 3. Moreover, with respect to his alleged use of marijuana, Mr. Smith argues that "there was no need to assert [the Fifth Amendment] at the time that the discovery responses were made," because the "marijuana use was not an issue" in the first charges brought against him that were pending in traffic court. *Id.* at 4-5. In short, "Smith asserts his Fifth Amendment privilege to the extent that the information and records sought could potentially incriminate him in the pending criminal proceeding, and that right has never been waived." *Id.* at 6. Mr. Smith also takes issue with Plaintiffs' proposal to prohibit the use of discovery in the criminal proceedings *except for perjury or impeachment.* Mr. Smith argues, "[t]his makes no sense." The prosecution would have to review the testimony in order to know whether it could be used for impeachment, and it "would leave open the door for the prosecution to interpret whether they believe his testimony to be inconsistent and impeachable." *Id.* At the hearing on the Motion to Stay, Plaintiffs were agreeable to a protective order that did not exclude "perjury or impeachment."

Law and Analysis

I.    *Legal Standard – Motion to Stay Pending Criminal Proceedings*

There is no general constitutional, statutory, or common law prohibition against the simultaneous prosecution of parallel criminal and civil actions. *D'Angelo v. Pintado*, No. 09-3667, 2009 WL 4642009, at *1 (E.D. La. Dec. 2, 2009) (citing *SEC v. First Fin. Grp. of Tex., Inc.*, 659

F.2d 660, 666-67 (5th Cir. 1981)). However, "[d]istrict courts have discretion to stay a case when the interests of justice so require." *St. Martin v. Jones*, No. 08-1047, 2008 WL 4534398, at *1 (E.D. La. Oct. 2, 2008). In ruling on requests for stays of parallel civil proceedings, "[j]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962). Staying a civil proceeding "contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) (quoting *First Fin. Grp. of Tex., Inc.*, 659 F.2d at 668).

"There needs to be a 'real and appreciable' risk of self-incrimination in order to postpone civil discovery until termination of a criminal action." *Shell Offshore, Inc. v. Courtney*, No. 05-1956, 2006 WL 1968926, at *1 (E.D. La. July 12, 2006). "A stay also may be justified 'to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case.'" *Kinnie Ma Individual Retirement Account v. Ascendant Capital, LLC*, No. 19-1050, 2023 WL 5417142, at *3 (W.D. Tex. Aug. 21, 2023) (quoting *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009)). In determining whether to stay a civil proceeding pending the outcome of a related criminal case, courts consider the following factors: "(1) the extent to which the issue in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interest of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *St. Martin*, 2008 WL 4534398, at *1 (citations omitted);

*see also Alcala*, 625 F. Supp. 2d at 399 (collecting district court cases in the Fifth Circuit that apply this test).

  II.    Analysis of Stay Factors

### 1. The extent to which the issues in the civil and criminal cases overlap.

The extent to which the underlying civil and criminal actions overlap is considered the most important threshold issue in determining whether to grant a stay because self-incrimination is more likely if there is significant overlap. *See Walker*, 2015 WL 5873392, at *6; *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 906-07 (S.D. Tex. 2008); *Shell Offshore, Inc.*, 2006 WL 1968926, at *1 (same). "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter." *Whitney Nat'l Bank. v. Air Ambulance ex rel B&C Flight Mgmt., Inc.*, No. 04-2220, 2007 WL 1468417, at *2 (S.D. Tex. May 18, 2007) (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).

Here, the civil and criminal claims against Mr. Smith involve the same matter, *i.e.* Mr. Smith injuring Plaintiffs while operating a vehicle allegedly while intoxicated. The criminal charges against Mr. Smith include three counts of first degree vehicular negligent injuring and one count of DWI with blood alcohol content greater than .08. Rec. Doc. 94-4. The civil claims against Mr. Smith similarly relate to the injuries he caused to the three passengers in the other vehicle, namely Karen Hillhouse, Nelson Curren, and Ryan Curren, and Plaintiffs allege that "Smith's intoxication was a cause in fact of the collision and damages sued on herein." Rec. Doc. 1-1 at ¶¶ 9-15.[5] Thus, the first factor weighs in favor of a stay.

---

[5] Plaintiffs name other defendants in the civil action and allege that Mr. Smith was in the course and scope of his employment for, and driving a vehicle owned by, Defendant IPFS Corporation, for which Defendants Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and National Union Fire Insurance Company of Pittsburg, Pa. issued policies of liability insurance coverage. However, Mr. Smith is not requesting a stay

## 2. The status of the criminal proceedings.

In evaluating the status of the criminal proceedings, "[a] court must carefully consider the time reasonably expected for resolution of the other case." *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp 2d 902, 905 (S.D. Tex. 2008). "A stay of a parallel civil proceeding is most appropriate where a party has been indicted for an offense and must defend a civil action involving the same matter because it is more likely that a defendant will make incriminating statement[s] after the indictment has been issue[d] and the prejudice to the civil plaintiff is lessened by the likely quick resolution of the criminal matter due to Speedy Trial Act considerations." *D'Angelo*, 2009 WL 4642009, at *2[6]; *see also U.S. ex rel. Gonzalez v. Fresenius Medical Care N.A.*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008) ("[T]he strongest case for deferring a civil proceeding until after completion of a criminal proceeding is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

Here, Mr. Smith has been indicted and the criminal proceeding is in the discovery stage. The criminal trial has not yet been set, but it is forthcoming. If the civil case is permitted to proceed, Mr. Smith would be subject to a deposition on the same topics at issue in the criminal case. He could potentially make incriminating statements in the civil deposition that could be used against him in the criminal trial.[7] In responding to civil discovery on the parallel issues, Mr. Smith might

---

with regard to the claims against Defendant IPFS Corporation or the Defendant insurers as to the course and scope and coverage issues; Mr. Smith is only requesting a stay as to further discovery against him.

[6] The Court notes that the criminal proceedings are pending in the Orleans Parish Criminal District Court, so the Speedy Trial Act is not applicable. Louisiana, however, has enacted an equivalent to the Speedy Trial Act to establish specific timelines for establishing trials. Under Louisiana Code of Criminal Procedure article 701, upon a valid motion by the defendant for a speedy trial, the trial of a defendant charged with a felony shall commence within 180 days if the defendant is not in custody. La. Code Cr. P. art. 701(D); s*ee State v. Williams*, 2006-1150 (La. App. 4 Cir. 1/24/07); 951 So. 2d 1158, 1160 ("In addition to the statutory right to a speedy trial recognized by La.C.Cr.P. art. 701(A), a defendant also has a fundamental, constitutional right to a speedy trial.") (citation omitted)).

[7] Plaintiffs argue that Mr. Smith has waived the privilege against self-incrimination by making statements in his discovery responses regarding who he was with and whether he was drinking alcohol or using drugs before the

also expose his criminal defense strategy in the civil discovery process. *See St. Martin*, 2008 WL 4534398, at *2 ("Because the civil and criminal issues are so closely intertwined, proceeding with the civil action including proceeding with the discovery process would present the risk that [defendant] would have to expose his criminal defense strategy and lead to his either incriminating himself in the criminal action or lead to his taking the Fifth Amended [sic] in the civil case and thereby, defeat the discovery process."). Civil discovery into the issue of Mr. Smith's intoxication might also yield information that would not be discoverable through criminal discovery. *See Kinnie Ma*, 2023 WL 5417142, at *3 ("A stay also may be justified 'to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b) . . . .'" (quoting *Alcala*, 625 F. Supp. 2d at 397)). The Court thus finds that the status of the criminal case weighs in favor of a stay.

3. **The Plaintiffs' interests in proceeding expeditiously and the prejudice to Plaintiffs caused by the delay.**

In evaluating the burden on a plaintiff caused by a delay in civil proceedings, "courts ordinarily insist that the plaintiff show more prejudice than 'simply a delay in [her] right to expeditiously pursue [her] claim.'" *D'Angelo*, 2009 WL 4642009, at *2 (quoting *Whitney Nat'l Bank*, 2007 WL 1468417, at *3); *but compare U.S. ex rel. Gonzales*, 51 F. Supp. 2d at 763 ("[T]he compensation and remedy due a civil plaintiff should not be delayed.' . . . 'Plaintiffs have a legitimate interest in the expeditious resolution of their case.'" (quoting *Gordon v. FDIC*, 427 F.2d 578, 580 (D.C. Cir. 1970); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995)).

---

incident. Plaintiffs also argue that the Court could issue a protective order precluding the use of statements in this case outside of this case. These arguments are addressed in considering Mr. Smith's interests below.

11

Plaintiffs offer far more than the mere prejudice of not being able to expeditiously pursue their claims. They do not just feign prejudice by way of delayed potential compensation; instead, they specify that delayed compensation comes at significant trouble and hardship to the Plaintiffs. Specifically, because Plaintiffs cannot afford the care and tools that Mrs. Karen Hillhouse's injuries necessitate, Mrs. Hillhouse is only able to access one bedroom in the home, she has limited access in other rooms, and she has difficulty navigating the home's narrow hallways. Plaintiffs also submit that they do not have an ADA accessible van, necessitating them to incur costs for transportation to get to and from physical therapy and occupational therapy twice a week, as well as additional medical appointments.

In addition to these significant constraints, Plaintiffs also indicate that a stay would prejudice them "by preventing them the ability to secure evidence which would be lost during the pendency of the stay," specifically with respect to the electronic data that Plaintiffs seek via a forensic imaging of Mr. Smith's cellphone and the memories of the individuals with whom Mr. Smith communicated and whom Mr. Smith was with leading up to the collision.

Mr. Smith requests a stay until the conclusion of his criminal proceedings. But no trial has yet been set. The parties reported at oral argument that a motion hearing (perhaps to address a motion to suppress) has been set for early August—one month from now. It could take months or even years before the criminal trial is held or a plea entered. Furthermore, it is unclear if Mr. Smith contemplates a stay that runs through the exhaustion of all avenues of appeal in the criminal action. This civil case has been pending for nearly a year, and Plaintiffs' injuries were sustained over a year ago in May 2024. When considering the time required for the prosecution of Mr. Smith's criminal case, Plaintiffs' concerns regarding witnesses' fading memories and the potential that evidence may be lost are not insignificant. On this point, though, the Court finds that some

remedies can reduce this risk—such as requiring the data on Mr. Smith's phone to be copied and preserved. Nonetheless, the Court finds that a stay for an indeterminate length of time could significantly delay and prejudice Plaintiffs' ability to obtain relief, the need for which is particularly acute here given Mrs. Hillhouse's catastrophic injuries, limitations, and care requirements. The Court therefore concludes that this factor weighs against granting the instant motion.

### 4. The private interests of and burden on the defendant.

Courts also consider the interest of the defendant in securing the stay and the burden on him that would result if the stay were denied. "If the defendant would be burdened by civil discovery on the same issues as a pending criminal case, this factor weighs in favor of a stay." *Whitney Nat'l Bank*, 2007 WL 1468417, at *3.

In the criminal proceeding, Mr. Smith risks ten years imprisonment for each of the three felony charges. His very liberty is at stake. If discovery is allowed to proceed against him here, he may be required to disclose his defense strategy to his detriment in the criminal proceeding. Additionally, he faces a potential conflict between asserting his Fifth Amendment rights and defending the civil action. If he speaks under oath in this action, his statements could be used against him in the criminal proceeding. But if he invokes the Fifth Amendment in this civil proceeding, his silence can be used against him here. *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008) ("[W]hile a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him . . . his refusal to testify may be used against him in a civil proceeding." (quoting *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983)).

The Court recognizes, though, that Plaintiffs have made a colorable argument that Mr. Smith has waived his Fifth Amendment privilege by responding to their discovery requests with

13

information about who he was with and whether he was drinking alcohol or using drugs before the incident. If discovery proceeds against Mr. Smith, the Court will have to determine whether Mr. Smith waived the Fifth Amendment privilege, and, if so, the scope of such waiver. This may require consideration of waiver on a question by question basis,[8] a determination that cannot yet be made as to the deposition of Mr. Smith that Plaintiffs have requested.

Additionally, Plaintiffs have proposed using a protective order[9] to prevent the use of discovery obtained in this case in the criminal proceeding. *See U.S. ex rel. Gonzales*, 571 F. Supp. 2d at 764 (denying defendant's motion for stay and finding that "there are other means to protect [the defendant's] interest. For example, the Court could enter a protective order prohibiting the use of Chavez's deposition answers, interrogatory responses, and answers to requests for admissions in any criminal proceedings brought against him."); *In re CFS-Related Secs. Fraud Litig.*, 256 F. Supp. 2d 1227, 1240 (N.D. Okla. 2003) ("Less drastic methods in lieu of a stay include sealing answers to interrogatories, sealing answers to depositions, imposing protective orders, imposing a stay for a finite period of time, limiting a stay to a particular subject, or limiting disclosure only to counsel."). But a protective order applies only in these proceedings and the parties have not addressed whether the Orleans Parish District Attorney might be able to obtain protected discovery via a subpoena that the state court, and not this court, would be tasked with enforcing.

On the whole, the Court finds that the burden to and interest of Mr. Smith weighs in favor of granting a stay.

---

[8] *Rogers v. United States*, 340 U.S. 367, 374 (1951) ("As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination.").

[9] At oral argument they withdrew their request that any such protective order exclude use for "perjury or impeachment" purposes in light of the issues raised by Mr. Smith concerning such language.

**5. The interests of the Court and the public.**

"The Court has interests in judicial economy and expediency. A court has an obligation to move its docket, and not let cases languish before it." *Doe v. Morris*, No. 11-1532, 2012 WL 359315, at *2 (E.D. La. Feb. 2, 2012) (citations and quotations omitted). "In addition, the public has an interest in the resolution of disputes with minimal delay, but only to the extent that the integrity of the defendant's rights can be maintained." *Id.* (citations and quotations omitted).

Here, granting a stay will not unduly interfere with the court's management of its docket. Additionally, as at least one court has recognized, "resolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in a criminal prosecution." *Trs. of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1140. And while the public has an interest in the resolution of cases with minimal delay, granting this stay would only be temporary. The Court therefore finds that its interest and the public interest counsel in favor of granting a stay.

III.  *Balancing of Stay Factors*

The significant overlap in proceedings, the status of the criminal proceedings, the interest of the defendant, and the interest of the Court all weigh in favor of a stay. But the interest of the Plaintiffs is substantial and weighs in favor of denying Mr. Smith's motion.

Under the circumstances, the Court finds that a limited stay is appropriate at this time to protect Mr. Smith's interests as to the criminal proceeding, while allowing as much discovery as possible to proceed in this civil matter. To that end, the Court will stay all discovery *to Mr. Smith* as to his activities and alleged intoxication on the night of the accident for a period of approximately two months. During this period, discovery may proceed as to the other parties and issues in this case. In other words, discovery to IPFS, the insurers, and non-parties as to any issue

15

shall proceed. And to the extent Mr. Smith has information on other issues such as the extent of his authority to use the vehicle and his training on any company rules regarding use of the vehicle, he must answer written discovery, produce documents, and, if requested, submit to a deposition. He will remain subject to a second deposition at a later time on the issue of his activities and alleged intoxication at the time of the accident.

At the end of the two month period, the parties will meet with the Court for a status conference at which time the Court will reassess the factors discussed above to determine whether an additional stay is appropriate.

Meanwhile, because all parties expressed interest in an early settlement of this matter, the parties—including the insurers—shall engage in informal settlement discussions. These discussions should, to the extent feasible, include the informal exchange of information to assist the insurer defendants with assessing the risks posed by this case. If the parties believe a settlement conference with the undersigned could be fruitful, they will contact the undersigned's chambers to obtain available dates.

Finally, to protect against the risk of data loss, Mr. Smith's cell phone shall be copied and the copy shall be held in the possession of Mr. Smith or his counsel. Plaintiffs' counsel and Mr. Smith's counsel shall work together to find an agreeable protocol for doing so. To the extent any relevant data may be located elsewhere—such as on the servers of third party applications like Cash App that Mr. Smith can access by logging in—Mr. Smith must download and preserve this data also. All data preservation shall be completed within two weeks.

## Conclusion

Based on a balancing of the relevant factors, the Court finds it appropriate to stay discovery to Mr. Smith as to his activities and alleged intoxication on the night of the accident until

September 10, 2025. All other discovery shall proceed, and data within Mr. Smith's control shall be downloaded and preserved as discussed herein. The parties shall meet for a video status conference with the Court on September 5, 2025, at 1:00 p.m. to discuss the continued need for a stay. Accordingly, Mr. Smith's Motion to Stay (Rec. Doc. 94) is GRANTED.

    New Orleans, Louisiana, this 8th day of July, 2025.

                                                */s/ Janis van Meerveld*
                                                   Janis van Meerveld
                                          United States Magistrate Judge