UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KAREN KILBERT HILLHOUSE, ET AL.,<br>*Plaintiffs* | CIVIL ACTION<br>NO.: 24-1855 |
| VERSUS | SECTION: "P" (1) |
| IPFS CORPORATION, ET AL.,<br>*Defendants* | JUDGE DARREL J. PAPILLION<br><br>MAGISTRATE JUDGE<br>JANIS VAN MEERVELD |

ORDER AND REASONS

This case arises out of a motor vehicle accident that resulted in serious injuries. Before the Court is Plaintiffs' Motion to Compel Evidence from Joshua Alexander Smith (Rec. Doc. 91), wherein Plaintiffs seek to compel the following information from Defendant Smith: (1) his past medical and prescription records for one year prior to the collision; (2) his financial records (including specifics on certain Cash App payments made prior to the accident) and all information related to his financial transactions from May 24, 2024 to May 29, 2024; and (3) a forensic examination of Smith's cell phone. As a result of this Court's order temporarily staying discovery in this matter (Rec. Doc. 106), only the first request is live at this time. The Court finds the requested medical records are relevant and proportional to the needs of the case and that Mr. Smith's privacy interest will be adequately protected by production of the medical records pursuant to the Protective Order governing confidential documents. Accordingly, the Motion to Compel (Rec. Doc. 91) is GRANTED as to the medical and prescription records.[1]

Background

The factual background of this lawsuit has been described in detail in the Court's recent order staying discovery. Rec. Doc. 106. Of relevance to the present dispute, the accident at issue

---

[1] As to the second and third requests, the Motion is DENIED as moot.

1

occurred on May 26, 2024, at approximately 4:14 a.m. when an SUV owned by IPFS Corporation and being driven by Mr. Smith ran a red light in the process of making a left hand U-turn and collided with a pickup truck with plaintiffs Karen Kilbert Hillhouse, Nelson Curren, and Ryan Curren inside, propelling the truck head on into a concrete pillar. The plaintiffs suffered severe injuries, with Mrs. Hillhouse's injuries leaving her a paraplegic.

At the scene of the collision, the investigator officers smelled alcohol emanating from Mr. Smith's breath, and an independent witness saw him dispose of liquor bottles. Mr. Smith admitted to the investigating officers that he had consumed alcoholic beverages prior to the collision. He submitted to a breathalyzer test at 6:27 a.m., which returned a result of .104 %. At the Emergency Room, Mr. Smith also submitted to a urine screen, which tested for amphetamine, barbiturate, benzodiazepine, THC, cocaine, opiates, phencyclidine, methadone, and fentanyl. Ex. I to Mo. to Compel, Rec. Doc. 91-13, at 37. When he related his medical history at the ER, he mentioned taking Flexeril as needed for shoulder pain and Xanax as needed for anxiety. Id. at 25. He reported social alcohol and marijuana use and that he had used both the last night. Id.

## Discovery Issues

Plaintiffs filed the present Motion to Compel in early May 2025. Defendant Smith responded by moving to stay the proceedings pending a criminal prosecution pending against him in state court. Although he was originally charged with Operating a Vehicle While Intoxicated and Careless Operation of a Vehicle, he is now being prosecuted with three counts of First Degree Vehicular Negligent injuring. The Court granted Mr. Smith's motion and stayed discovery *to Mr. Smith* concerning his activities and alleged intoxication on the night of the accident for approximately two months. Rec. Doc. 106. The order temporarily precludes the financial record discovery sought by the plaintiffs directly from Mr. Smith, and the order also addresses the forensic

2

examination request by requiring Mr. Smith copy and preserve the data on his phone. Plaintiffs' request for Mr. Smith's past medical and prescription records for one year prior to the collision remains live.[2]

Plaintiffs argue that the medical records are relevant to the toxicological assessment being performed by their toxicology expert, Patricia Williams, Ph.D. In an affidavit submitted with the motion, Williams attests that "[t]he past medical and prescription records of Joshua Alexander Smith are relevant to my toxicological assessment as many prescription drugs may have subchronic or chronic effects and may have adverse interactions with currently circulating alcohol and/or drugs in the blood." Ex. J. to Mo. to Compel, Rec. Doc. 91-14, at 2. She also cites the potential for prescriptions to have side effects with non-prescribed drugs and/or alcohol. Id.

Mr. Smith opposes. He argues that Plaintiffs already have the breathalyzer test results and his medical records from the ER visit after the accident, including his urine drug screen results. He insists this is the only relevant evidence to his toxicology at the time of the accident. He points out that his urine screen after the accident was void of any presence of a prescription drug. He argues that his past use of prescription drugs would not have any relevance to his intoxication at the time of the accident. He says that even if certain prescriptions have an exacerbating effect on alcohol or drug use, the best evidence of the effect of drug or alcohol use would be the Standard Field Sobriety Test that was administered to Smith after the accident and which he passed. Citing Louisiana Code of Evidence 510, he argues that he has a privilege to refuse to disclose his medical records. He submits that federal case law supports the theory that a defendant driver's medical

---

[2] Plaintiffs' discovery requests include four interrogatories asking Mr. Smith to identify his health care providers and pharmacies, his health insurance, and the medications prescribed to him at the time of the incident (whether or not he was taking them). Rec. Doc. 91-5, at 9. They also request that he execute a medical release for all medical providers, mental health care providers, pharmacies, and health insurance companies referenced in his responses to interrogatories. Id. at 18.

records are not discoverable when the defendant driver does not rely on them for a claim or defense. He also argues generally with regard to all three requests raised in the motion that "Smith's privacy rights, coupled with a concern that the irrelevant evidence identified in this case will be brought into the criminal matter, for which the prosecution has no right of access, is a grave concern for Smith."

In reply, Plaintiffs point out that the ER records establish Mr. Smith had an active Flexeril prescription, but this is not a category of drug that was tested for in the urine screen. They submit that if Smith took Flexeril on the day of the accident in addition to ingesting alcohol and drugs, this would be relevant to their claims for punitive damages.[3] They say that if Mr. Smith filled his prescription monthly, it would be hard for him to contend that he had not taken Flexeril on the day of the collision. They also argue that his past history and use of marijuana and the frequency thereof is likely to be commented upon in his medical records and is relevant to the toxicological assessment. They argue that although Mr. Smith criticizes the Williams affidavit, he presents no expert testimony to support his arguments. Plaintiffs argue further that Louisiana Code of Evidence 510 is inapplicable and, in any event, the exception in 510(B)(2)(c) would apply. They argue that a protective order is in place to protect Mr. Smith's privacy interests. They also suggest that the medical records could contain information relevant to their claims relating to negligent hiring and negligent entrustment by Mr. Smith's employer IPFS. They say they cannot rely solely on Mr. Smith's representations, because they have changed.

At oral argument, Mr. Smith's counsel argued that the request for medical records should be subject to the stay because Plaintiffs seek the records to bolster the intoxication argument and

---

[3] La. Civ. Code art. 2315.4 ("In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.").

4

could be used against him in the criminal proceeding. When asked whether the District Attorney would be able to obtain Mr. Smith's medical records directly from the medical providers anyway, counsel was unsure.[4] Plaintiffs' counsel and Mr. Smith's counsel both commented that they believed discovery was closed in the criminal proceeding.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

2. *Medical Records of Defendant Driver*

Mr. Smith contends that his medical records are protected by the Louisiana health care provider-patient privilege. La. Code Evid. art. 510. The parties dispute whether Louisiana Code of Evidence 510 applies. Because this lawsuit raises state law claims and the matter is before this Court under its diversity jurisdiction, state law privileges apply. Martin v. Lafon Nursing Facility of the Holy Family, Inc., 244 F.R.D. 352, at 354 (E.D. La. 2007); see Fed. R. Evid. 501 ("[I]n civil

---

[4] It appears that if it complies with the relevant privacy statutes by, among other things, providing notice to the criminal defendant, the State is authorized to subpoena the medical provider for the defendant's medical records. See State v. Downs, 2004-2402 (La. App. 1 Cir. 9/23/05), 923 So. 2d 726, 732 (reversing the trial court's denial of a motion in limine to exclude defendant's medical records, finding that the State had not complied with the statutory requirements). Mr. Smith did not argue that responding to the interrogatories or signing a medical authorization would implicate his Fifth Amendment privilege against self-incrimination.

5

actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision therefore shall be determined in accordance with state law.").

The Louisiana health care provider-patient privilege provides that :

> In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.

La. Code Evid. art. 510(B)(1). The privilege is subject to exceptions, including "[w]hen the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense . . ." Id. art. 510(B)(2)(c).

Furthermore, Louisiana statute provides for the disclosure of records by a health care provider. See La. Rev. Stat. § 13:3715.1(B). Medical treatment records may be disclosed by a health care provider in accordance with Louisiana Code of Evidence article 510, but also pursuant to "a lawful subpoena or court order" obtained in accordance with §3715(B). Id. The Louisiana Supreme Court has interpreted this statute as allowing a court to order production of records even where one of the exceptions in article 501(B)(2) does not apply, if following a contradictory hearing the court determines the release would be "proper." See Moss v. State, 2005-1963 (La. 4/4/06), 925 So. 2d 1185, 1199. "In determining whether the disclosure of otherwise privileged information is 'proper,' the court is required to assess whether, in a particular case, the evidentiary need for the disclosure outweighs the patient's privacy interests." Id. at 1200. The Louisiana Supreme Court explained further that in light of the policy reasons for the privilege "the burden is on the party seeking to overcome the privilege to establish the propriety of disclosure." Id. at 1201.

> [T]he privilege should not be subject to casual breach by every litigant in single-minded pursuit of the last piece of evidence which may marginally contribute to his or her case. There should be a substantial showing of relevance and need, i.e. lack of ability to obtain the evidence elsewhere, by the party seeking disclosure. Further, any exception to the privilege should be narrowly tailored and should extend only to information necessary and relevant to the condition relied on as a defense or claim. In other words, it is "proper" to disregard the privilege only to the limited extent necessary to access information which is directly related to determining the truth.

Id.

Mr. Smith cites a case from Florida state court where a relevant issue was "whether defendant was impaired by a mixture of the drug Ritalin and alcohol at the time of the accident." McEnany v. Ryan, 44 So. 3d 245, 247 (Fla. Dist. Ct. App. 2010). The court found that although determining whether the defendant had a current Ritalin prescription was relevant, the majority of the medical records sought by plaintiff would have no relevance to that inquiry. Id. The court ordered an *in camera* inspection to protect the defendant's privacy interest. Id. This case, albeit in a different jurisdiction, offers a useful example of balancing of privacy interests against the litigation need.

Mr. Smith also cites a case from the District of New Mexico, where plaintiffs sought medical records from the defendant drivers in a five car collision so they could "determine whether any medical conditions were a contributing cause of this collision." Empey v. FedEx Ground Package Sys., Inc., No. CV 15-0815 KK/KBM, 2016 WL 10179244, at *7 (D.N.M. July 7, 2016). But the court found that on the date of the accident, the defendant drivers were medically-qualified holders of commercial driver's licenses and the plaintiffs had offered no evidence and made no allegation that any defendant driver suffered from a particular disqualifying medical condition. Id. at *7-8. Additionally, the defendant drivers did not rely upon a medical condition as an element of any claim or defense. Id. at *8-9. The court did not allow discovery of the defendant driver medical records, except for records of their medical examinations pursuant to the Federal Motor Carrier

7

Safety Act, which the court held had been put at issue by the drivers' contention that they were in good health and fit to drive commercial vehicles. Id. at *9. Although the Empey case is distinguishable because the intoxication of drivers and possible drug interactions was not at issue, it is instructive in its determination that the drivers had put their medical qualification to drive at issue by taking the position they were qualified to drive.

Finally, Mr. Smith cites Jackson v. Wiersema Charter Serv., Inc., where the court ordered production of the medical records reviewed and relied on by the physician that performed the "physical examination and certificate for Illinois School Bus Driver" for the defendant driver. No. 4:08CV00027 JCH, 2009 WL 2175972, at *1 (E.D. Mo. July 21, 2009). But the court did not allow production of the defendant driver's medical records from the Veteran's Hospital that did not perform his commercial driver's license examination and which records were not reviewed pursuant to his CDL examination. Id. The court found these records were protected by defendant's physician-patient privilege. Id. Like in Empey, this case did not involve the alleged intoxication of the defendant driver, but the court's analysis of the relevance of medical records showing the driver's medical qualification to drive is somewhat instructive.

3. *Analysis*

First, the Court rejects Mr. Smith's argument that its order staying discovery to Mr. Smith concerning his intoxication applies to the medical records request. The stay applies to discovery to Mr. Smith. Practically, though, plaintiffs now seek records from Mr. Smith's medical providers. Mr. Smith's counsel argued that the records could be used against him in the criminal proceeding. But Mr. Smith has not shown that the District Attorney would otherwise be unable to obtain medical records relevant to the criminal proceeding. The Court's previous order does not resolve the issue of whether the requested medical records are discoverable at this time.

Before addressing relevance of the requested medical and prescription information, the Court will consider whether the records are discoverable under Louisiana's health-care provider privilege, which, as discussed above, is applicable in this case. Mr. Smith argues that the exceptions to the privilege are inapplicable because plaintiffs already have records regarding his blood alcohol level and urine drug screen and because he has not sued the plaintiff for damages for injury. He argues further that he has not relied upon his medical condition as an element of his defense.

Although plaintiffs insist Mr. Smith's medical records are relevant, they do not claim that Mr. Smith has put his medical condition at issue. And indeed, unlike in the commercial driver's license cases above, Mr. Smith has not taken the position that he was medically qualified to drive.

Even if the Court cannot find that Mr. Smith has put his medical records directly at issue, disclosure by the medical providers and pharmacies may nonetheless be "proper," as contemplated by La. Rev. Stat. § 13:3715.1(B) and Moss, if "the evidentiary need for the disclosure outweighs the patient's privacy interests." Moss, 925 So. 2d at 1199.

The Court finds that the evidentiary need for the pharmacy and medical records for the one year prior to the accident outweigh Mr. Smith's privacy interest in those records. The Court agrees that the regularity with which Mr. Smith filled his Flexeril prescription could bear on whether it was likely he took it at the time of the accident gets into the zone of relevance. Although this evidence might be circumstantial, it could provide a basis for questioning Mr. Smith or for plaintiffs' expert's opinions. Moreover, considering the gravity of the accident at issue and the fact that there is already credible evidence indicating Mr. Smith was under the influence of alcohol at the time of the accident, the Court finds that all of Mr. Smith's prescription and medical records for the one year prior to the accident are relevant to identifying the medications that he may have

been taking at the time of the accident and which may have interacted with any alcohol or marijuana that he consumed that night.

Although plaintiffs already have the breathalyzer and urine screen results, Mr. Smith is taking the position that he was not intoxicated at the time of the accident. Additional evidence that could bear on his impairment at the time of the accident remains relevant. Further, to prove their claim for punitive damages, they will have to show "a wanton or reckless disregard for the rights and safety of others." La. Civ. Code art. 2315.4. Additional evidence regarding medications that may have interacted with any alcohol or drugs he consumed is relevant to that inquiry.

Plaintiffs' modified request for medical treatment records extends to all medical records, including mental health treatment, but is limited to the one year prior to the accident. The Court finds this time period is narrowly tailored to the needs of the case. Critically, the Court will require that the prescription and medical records be made subject to the Protective Order in this case. The use and disclosure of the records will thereby be limited to this case. To the extent portions of the records turn out to be irrelevant, the irrelevant portions can be excluded or redacted from the public record. The court finds the Protective Order will adequately protect Mr. Smith's privacy interests. And with this protection, the Court finds the evidentiary need for the documents outweighs Mr. Smith's privacy interest. The medical and prescription records for the one year prior to the accident are, therefore, discoverable.

The actual discovery requests include four interrogatories and a request for production of a signed authorization for the release of medical records. Interrogatory 19 asks Mr. Smith to identify his health care providers, Interrogatory 20 asks him to identify his health insurance plans, Interrogatory 21 asks him to identify all medications he was prescribed, and Interrogatory 22 asks him to identify all of his pharmacies. Request for Production 42 asks him to execute a medical

release for all health care providers and pharmacies he identifies in his interrogatory responses. Mr. Smith will be required to respond to Interrogatory 19, 21, and Request for Production 42 for the reasons discussed above. The Court will not require him to respond to Interrogatory 20 because no case for the relevance of his health insurance plans has been made. Nor will the Court require him to respond to Interrogatory 21. This information will be contained in his medical and prescription records. And, although this interrogatory asks only for the drugs he was prescribed and not the drugs he was taking, the Court will, at this stage, err on the side of caution to the extent a response might be considered an admission as to his use of prescriptions that could interact with alcohol or drugs at the time of the accident.

## Conclusion

While Mr. Smith has a privilege protecting his medical records from public disclosure, the Court has found the requested records to be relevant and that the importance of the records outweighs Mr. Smith's privacy interests, which will be adequately protected by the Protective Order limiting the use and disclosure of his records. Accordingly, the Motion to Compel (Rec. Doc. 91) is GRANTED; Mr. Smith shall furnish responses to Interrogatories 19 and 21, limited to the one year prior to the accident, and shall execute an authorization for the release of his medical records and prescription records for the one year period preceding the accident by the providers he identifies. These discovery responses and the records obtained shall be "Confidential" pursuant to the Protective Order (Rec. Doc. 72).

New Orleans, Louisiana, this 4th day of August, 2025.

_Janis van Meerveld_
Janis van Meerveld
United States Magistrate Judge